FILED
2015 Jun-05  AM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CONSTANCE CLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case Number 2:14-cv-1380-SLB |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Constance Clowers brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, DIB, and SSI on November 21, 2010, alleging a disability onset date of February 14, 2010. (R. 126, 128, 167.)[1] These applications were denied by the Social Security Administration ["SSA"], (R. 76, 79), and plaintiff subsequently requested a hearing before an Administrative Law Judge ["ALJ"],

---

[1] Reference to a document number, ("Doc.___"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.___").

which was held on October 22, 2012, (R. 56). After the hearing, the ALJ found that plaintiff was capable of making a vocational adjustment to other occupations, such as circuit board assembler, line inspector, and assembler. (R. 35.)  In light of these findings, the ALJ denied plaintiff's request for a period of disability, DIB, and SSI on December 7, 2012. (R. 36.)

On December 20, 2012, plaintiff petitioned the Appeals Council to review the ALJ's decision, (R. 15), and on May 19, 2014, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security, (R. 1). Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on July 17, 2014. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))

(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for DIB or SSI.[2] *See* 20 C.F.R. § 404.1520(a)(1)-(2); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). For the purposes of this

---

[2] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. . . . If we can find that you are disabled or not disabled at a step, we make our determination or decision and do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.

20 C.F.R. § 404.1520(a)(4).

evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work

---

[3] The Regulations define "substantial gainful activity":

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since February 14, 2010, the alleged onset date. (R. 28.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

---

[4] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*." 11th Cir. R. 36-2 (emphasis added).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[5] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* SSR 85-28, 1985 WL 56856 (1985). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had severe impairments of major depressive disorder and anxiety disorder. (R. 28.) The ALJ also found that plaintiff had non-severe impairments, including a history of migraines, asthma, and a history of polysubstance abuse. (R. 29.)

---

[5] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or equals an impairment listed in the regulations, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).  The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  (R. 29.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commissioner's] assessment of [the claimant's] residual functional

7

capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff has a limited education and was a younger individual between the age of 18 and 49 on the alleged onset date. (R. 34.) The ALJ made the following findings regarding plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid concentrated exposure to operational control of moving machinery and unprotected heights. She is limited to simple, routine, and repetitive tasks in a low stress job, defined as having only occasional decision making and occasional changes in the work setting. She is further limited to occasional interaction with coworkers, supervisors, and the public.

(R. 31.)

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the

8

national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant disabled. 20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff could perform, considering her RFC, age, education, and work experience. The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of circuit board assembler, line inspector, and assembler, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 69-70.)

Because the ALJ found that jobs consistent with plaintiff's RFC and vocational factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (R. 35.)

## B. MS. CLOWERS'S CLAIMS

Plaintiff argues that (1) the ALJ erred in rejecting the medical opinion of Dr. Rachel Julian, plaintiff's treating psychiatrist, and in failing to recontact Dr. Julian or otherwise further developing the record, (2) the ALJ did not fully report the results of a psychological consultative exam ("CE") performed by Dr. Randall Griffith, and (3) the ALJ inappropriately relied on a CE performed by Dr. William Beidleman prior to plaintiff's alleged onset date. (Doc. 11 at 10-11.) Having reviewed the entire record before the ALJ and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

### 1. Medical Opinion of Dr. Rachel Julian

"The Secretary, and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir.1977)). The ALJ considers medical opinions together with the rest of the relevant evidence received in making her determination. *See* 20 C.F.R. §§ 404.1520b, 416.920b. The regulations provide specific criteria for evaluating medical opinions from acceptable medical sources: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) "other factors."[6] *See* 20 C.F.R. §§

---

[6] With regard to "other factors," the regulation states:

When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For

404.1527(c), 416.927(c). "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B Nov. 1981) (citing 20 C.F.R. § 404.1526).[7]

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam)). "An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings." *Oldham*, 660 F.2d at 1084. Accordingly, with good cause, the ALJ may disregard a treating physician's opinion "but [she] 'must clearly articulate [the] reasons for doing so,'" because "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported

---

example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

[7] Decisions issued by a Unit B panel of the former Fifth Circuit are binding precedent. *See Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

by substantial evidence." *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)).

Plaintiff contends that the ALJ improperly rejected the medical opinion of Dr. Julian "on the basis that Dr. Julian offered no supportive findings and that it was inconsistent with the record as a whole." (Doc. 11 at 8.) According to plaintiff,

> [t]he ALJ had only to look at the treating notes to find[,] despite many medication adjustments[,] multiple clinical findings relating to 'worsening depression' and 'considerable residual depression' manifested by excessive sleeping and crying spells for the earlier period in November 2010[,] (R. 335), or 'increased depression' manifested by decreased sleep, feels more stressed out, on meds mood varies, agitated, 3-4 hours sleep, history of cutting, more contemporaneously in May 2012[.] (R. 347[.]).

(Doc. 11 at 8-9.) Dr. Julian treated plaintiff eight times. (*See* R. 330-42.) On plaintiff's second visit, Dr. Julian prescribed plaintiff medication, and plaintiff reported having a range of symptoms from none to moderate. (R. 335.) Plaintiff reported similar symptoms on the next visit, and Dr. Julian increased plaintiff's medications and added a new medication. (R. 334.) In February 2011, plaintiff returned for an exam and reported that she had been off her medication and that she had worse sleep, appetite, energy, and mood. (R. 333.) She stated that, while on her medication, she was getting out more, had a better mood, and was more hopeful. (*Id.*) In May 2011, plaintiff reported an improvement in her mood, and in both May and July, Dr. Julian increased plaintiff's medication. (R. 331-32.) In January 2012, plaintiff reported being off her medication and stated that felt better on medication and wanted to resume taking her prescriptions. (R. 330.) In March 2012, Dr. Julian completed a

Supplemental Questionnaire regarding plaintiff's condition and opined that plaintiff had a

marked impairment, meaning one that seriously affects the ability to function, in all listed

categories. (R. 344-45.)

In considering Dr. Julian's medical opinion, the ALJ stated:

Once [plaintiff] started regular treatment, . . . she noted that Abilify helped
"a lot" and admitted at hearing [sic] that Wellbutrin helped. ([R. 334.])
Though in February 2011 [plaintiff] reported to Dr. Julian greater difficulty
leaving home for any reason secondary to anxiety, she admitted to being out
of medications for one month. Dr. Julian commented that she was previously
doing well on medications by getting out more and being more hopeful, and
diagnosed her with increased symptoms off medications. ([R. 333.]) At a
January 2012 follow-up, Dr. Julian noted that the claimant had missed her
last two appointments secondary to anxiety from leaving her home and had
not taken her medications for two months, but on medications was more
active and functioning well. ([R348.]) Dr. Julian again noted as of May 2012
that the claimant was not doing well off medications, but doing well on
medications. ([R347.]) The multiple statements from Dr. Julian in particular
establish a clear and consistent link between a worsening of symptoms and
noncompliance.

(R. 33.) Based on the consistent reports of plaintiff's mental improvements with medication,

the ALJ did not err in determining that Dr. Julian's opinion lacked supporting evidence. (*See*

R. 33.) As defendant contends, additional evidence supports the ALJ's decision to assign

little weight to Dr. Julian's opinion:

Plaintiff exhibited normal mood and affect during an April 2010
emergency room visit [for plaintiff's hip.] ([R. 32, 249.]) In September
2010, records reflect [p]laintiff was tearful and anxious but had adequate
insight and was pleasant and cooperative[.] ([R. 32, 237.)] The ALJ noted
that [p]laintiff's mini mental status examination by Dr. Julian's office in
October 2010 was largely normal, with [p]laintiff scoring 29 out of 30[.]
([R. 32, 340.]) In March 2011 . . . , Dr. Griffith concluded [p]laintiff was
[fairly] capable of independent functioning[.] ([R. 32, 309.]) Moreover,

13

> the ALJ noted that [p]laintiff had reported having depression and anxiety during the past 15 years and had worked during this time, that she did not stop working due to mental impairments but to stay home with her children, and that no treatment records exist demonstrating a worsening of symptoms on or around [p]laintiff's alleged onset date[.] ([R. 32, 356.])

(Doc. 12 at 14.) Because the ALJ gave adequate reasons for rejecting the opinion of Dr. Julian, the court finds that the ALJ based his decision on substantial evidence.

Further, the court finds that the ALJ was not required to recontact Dr. Julian or further develop the record. Plaintiff cites 20 C.F.R. § 404.1512(e) to argue that the ALJ should have recontacted Dr. Julian. (Doc. 11 at 9.) Under the former version of this regulation, an ALJ was required to recontact a medical source if the evidence from treating physicians, psychologists, or other medical sources was inadequate to make a disability determination. 20 C.F.R. § 404.1512(e); *see also* 20 C.F.R. § 416.912(e). As defendant points out, 20 C.F.R. §§ 404.1512(e) and 416.912(e), previously governing recontacting medical sources, have been amended, and the current regulations provide that the adjudicator "may" recontact a treating physician, psychologist, or other medical source. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). Even under the prior version of the regulations governing recontacting medical sources, however, the ALJ was not required to recontact Dr. Julian because the record contains substantial evidence on which the ALJ could base his disability determination.

Additionally, the ALJ was not required to further develop the record. "The  ALJ has a duty to develop the record where appropriate but is not required to order a consultative

examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007)) (internal quotations omitted). Because the court finds that substantial evidence supports the ALJ's findings, the ALJ was not required to further develop the record after rejecting the medical opinion of Dr. Julian.

### 2. Medical Opinion of Dr. Randall Griffith

Plaintiff contends that the ALJ "erred in failing to properly report the conclusions of the only appropriate psychological CE of record." (Doc. 11 at 11.) According to plaintiff,

> [a]lthough the ALJ partially reported Dr. Griffith's conclusions, he failed to state the degree of severity. Dr. Griffith opined that – Her difficulty concentrating would make it difficult for her to persist at tasks. Her psychiatric disorder would make it difficult for her to respond appropriately to supervisors and coworkers. Her ability to tolerate work stress appears limited to poor, assessing moderately severe depression with a fair to guarded prognosis.

(Doc. 11 at 6-7.) The ALJ review Dr. Griffith's examination of plaintiff, stating:

> In March 2011, consultative examiner Dr. Griffith observed mildly jittery behavior and slightly anxious affect, but the claimant still repeated three words and a simple sentence, accurately followed an inverted three-step command, spelled "world" backwards, repeated 5 digits forward and 3 backwards, and recalled 2/3 words after a short delay with cues.
> . . .
> Dr. Griffith stated that the claimant "appear[ed] fairly capable of independent functioning" and could understand, remember, and follow reasonably detailed instructions, but would have difficulty persisting in tasks, responding appropriately to supervisors and coworkers, and tolerating work stress. ([R. 309.])

15

(R. 32-33.) Given the ALJ's discussion of Dr. Griffith's examination and the ALJ's finding that plaintiff suffered from the severe impairment of major depressive disorder, defendant is correct that plaintiff "appears to fault the ALJ for not specifically mentioning Dr. Griffith's conclusion that [p]laintiff's ability to tolerate work stress 'appears limited to poor.'" (Doc. 12 at 9.) However, even without mentioning this portion of Dr. Griffith's opinion, the ALJ's consideration of his medical opinion is evidenced by the restrictions the ALJ placed on plaintiff in the RFC assessment. The ALJ limited plaintiff to "simple, routine, and repetitive tasks in a low stress job" and to "occasional interaction with coworkers, supervisors, and the public." (R. 31.) Therefore, the court finds that the ALJ properly considered and reported Dr. Griffith's medical opinion.

### 3. Medical Opinion of Dr. William Beidleman

Lastly, plaintiff argues that the ALJ improperly relied on a CE performed by Dr. Beidleman in August 2009. (Doc. 11 at 9.) Because the CE was performed prior to plaintiff's alleged onset date, plaintiff argues the CE is irrelevant. (*Id.*) Defendant responds that the ALJ had a duty to develop the record for twelve months preceding plaintiff's alleged onset date. (Doc. 12 at 11.) However, the Regulations specify that the ALJ has a duty to develop the record for a one-year period preceding the plaintiff's *application* date. *See* 20 C.F.R. §§ 404. 1512(d), 416.912(d) ("[W]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . ."). Plaintiff filed her application on November 21, 2010, so the examination by Dr. Beidleman,

performed in August 2009, did not fall in the twelve month period for which the ALJ must develop the record.

Nevertheless, the ALJ could consider the examination, given its close proximity in time to plaintiff's onset date. *See Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012) (finding that the ALJ properly considered evidence from before and after the relevant time period because the evidence had a bearing on the plaintiff's disability claim). Because the examination took place only seven months prior to plaintiff's onset date, February 14, 2010, the examination had some relevance, albeit not complete relevance, to the time period at issue. Therefore, the court finds no reversible error.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 5th day of June, 2015.

SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE